USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

BAO CHENG FU, GUANG LI ZHANG
and ZHONG QI LIN,

     15 Civ. 4549 (HBP)

    Plaintiffs,

     OPINION
 -against-    AND ORDER

MEE MAY CORP., d/b/a MEE NOODLE
SHOP & GRILL, JIANG QING CHEN,
KUANG CHI WU, JOHN WU (first
name unknown), JOHN DOE and
JANE DOE #1-10,

    Defendants.

-----------------------------------X

   PITMAN, United States Magistrate Judge:

   This matter is before me on the parties' joint application to approve the their settlement agreement (Docket Item ("D.I.") 63). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

   This is an action brought by three individuals who formerly made deliveries at a small Chinese restaurant in Manhattan and seeks allegedly unpaid wages, overtime premium pay and spread-of-hours pay. The action is brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law. Plaintiffs also assert claims based on defendants' alleged failure to maintain certain payroll records,

to provide certain notices as required by the Labor Law and to reimburse plaintiffs for the cost of bicycles that plaintiffs used to make deliveries.

The parties reached their proposed settlement prior to the settlement conference that I had scheduled in this matter, and therefore, my knowledge of the underlying facts and the justification for the settlement is limited to counsels' representations in the letters submitted in support of the settlement. Plaintiffs advise that when they were employed by defendants, they received a fixed weekly wage, regardless of the hours they actually worked. They further claim that this fixed weekly wage was less than the minimum wage and overtime premium required by law. Defendants claim that they maintained wage and hour documents, including time cards and pay records. Defendants also claim that they provided plaintiffs with proper notice of the tip credit and were, therefore, entitled to pay a reduced hourly rate. Finally, defendants also claim that plaintiffs' allegations concerning the number of hours they worked are inflated.

The parties have agreed to a total settlement of $24,000.00. The parties have also agreed that $3,000.00 of the settlement figure will be allocated to reimburse plaintiffs' counsel for their out-of-pocket costs, $7,000 (or one-third) of the remaining $21,000.00 will be paid to plaintiffs' counsel as

2

fees and the remaining $14,000.00 will be divided among the plaintiffs. The amounts claimed by each of the plaintiffs[1] and the net amount that each will receive after deduction for legal fees and costs are as follows:

| Plaintiff | Amount Claimed | Net Allocable Share |
|---|---|---|
| Bao Cheng Fu | $19,256.10 | $7,616.00 |
| Guang Li Zhang | $9,672.00 | $3,822.00 |
| Zhong Qi Lin | $6,497.06 | $2,562.00 |

The parties previously submitted the settlement agreement for approval in July of 2016 (Letter from Marisol Santos, Esq., to the undersigned, dated July 20, 2016 (D.I. 55), Ex. 1). In Opinions and Orders dated November 14, 2016 and March 31, 2017, I previously refused to approve the settlement agreement because the parties did not provide sufficient information to enable me to determine whether the proposed settlement was fair and reasonable and because the parties included various provisions that were inconsistent with the principles set forth in the relevant case law (Opinion & Order, dated Nov. 14, 2016 (D.I. 60); Opinion & Order, dated Mar. 31, 2017 (D.I. 62) ("March 2017

---

[1] The amounts claimed are the allegedly unpaid wages, exclusive of liquidated damages and exclusive of damages for the Labor Law notice claims.

Opinion & Order")). The parties subsequently submitted a renewed application for approval with amendments to the settlement agreement (see Letter from Jian Hang, Esq., to the undersigned, dated Sept. 25, 2017 (D.I. 63); Amendment of Settlement Agreement and Release Pursuant to Section 8 of the Agreement, dated Sept. 25, 2017 (D.I. 63-1) ("Amendment to Settlement Agreement")).

I have reviewed the docket sheet and the parties' submissions, and I now have sufficient evidence regarding the amount of each plaintiff's claim for unpaid wages, dates worked, weekly pay (and the fact that it was paid in cash) and the number of hours worked each week as well as an explanation for the allocation of the settlement amount (see Declaration of Zhong Qi Lin, dated Oct. 9, 2015 (D.I. 20); Declaration of Guang Li Zhang, dated Oct. 10, 2015 (D.I. 21); Declaration of Bao Cheng Fu, dated Oct. 12, 2015 (D.I. 22); Letter from Jian Hang, Esq., to the undersigned, dated Dec. 22, 2016 (D.I. 61); Letter from Jian Hang, Esq., to the undersigned, dated Sept. 25, 2017 (D.I. 63)).

The parties have also excised from the agreement provisions prohibiting plaintiffs from cooperating in any action or proceeding against defendants and barring plaintiffs from ever working for defendants or their affiliated entities or businesses (see Amendment to Settlement Agreement). The parties have also amended the broad mutual non-disparagement clause in the agree-

4

ment to permit truthful statements (see Amendment to Settlement Agreement).

> Court approval of an FLSA settlement is appropriate
> "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), citing Lynn's Food Stores, Inc. v. United States, supra, 679 F.2d at 1353-54. The presumption of fairness in this case is bolstered by the caliber of the parties' attorneys. Based upon the submissions of counsel in this case, it is clear to me that all parties are represented

by counsel who are knowledgeable regarding all issues in the case and who are well suited to assess the risks of litigation and the benefits of the proposed settlement.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). As discussed further below, the settlement here satisfies the five criteria enumerated above. However, because the settlement agreement still includes an overbroad general release, I shall provide the parties with another opportunity to amend the settlement.

First, after deduction of attorneys' fees and costs, the net settlement represents approximately 39.5% of the plaintiffs' estimated unpaid wages. The amount of the settlement allocated to plaintiff Fu represents 39.6% of his claimed unpaid

6

wages, the amount allocated plaintiff Zhang represents 39.5% of his claimed unpaid wages and the amount allocated to plaintiff Lin represents 39.4% of his claimed unpaid wages. Given the risks of litigation, as discussed in more detail below, the settlement amount is reasonable.

Second, the settlement will entirely avoid the burden, expense and aggravation of litigation. Although the parties have conducted some discovery, additional discovery will be needed in order for to prepare for trial. Settlement avoids the necessity of conducting additional discovery and preparing for a trial.

Third, the settlement will enable plaintiffs to avoid the risks of litigation. As noted above, defendants have indicated that they kept records of the hours plaintiffs worked. Plaintiffs, therefore, face the risk that a fact finder may credit defendants' documentary evidence. Thus, whether and how much they would recover at trial is far from certain. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v.

Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, counsel represents that the settlement is the product of arm's length bargaining between experienced counsel and that counsel advocated zealously on behalf of their respective clients during negotiations.

Fifth, there are no factors here that suggest the existence of fraud or collusion.

The settlement agreement also provides that, after deduction of $3,000 of counsel's out-of-pocket costs, approximately 33% of the remaining settlement amount will be paid to plaintiffs' counsel as a contingency fee. Contingency fees of one-third in FLSA cases are routinely approved in this circuit. See Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese

Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs' retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.). Therefore, the contingency fee is reasonable.

However, one significant problem remains regarding the general release in the settlement agreement. As noted in the Opinion and Order dated March 31, 2017, "[n]umerous judges in this Circuit have rejected general releases in FLSA settlement agreements that are not limited to wage-and-hour issues" (see D.I. 62 (citing cases)). The Opinion and Order specifically noted that the language in paragraph 3 and on page 6 of the

9

settlement agreement included releases that were not specifically limited to the wage-and-hour claims (see March 2017 Opinion & Order at 6-7). In their revised submission, the parties amended paragraphs 1.1 and 3 of the settlement agreement to limit plaintiffs' releases to wage-and-hour claims arising from the allegations at issue in this litigation (see Amendment to Settlement Agreement). However, the parties have not amended the language on page 6 of the settlement agreement that provides that plaintiffs "enter into this agreement intending to waive, settle, and release all claims plaintiff[s] had, have, or might have against defendants" (Letter from Marisol Santos, Esq., to the undersigned, dated July 20, 2016 (D.I. 55), Ex. 1 at 6). Given that the parties amended other portions of the settlement agreement to limit the general release, the failure to amend this language appears to be an oversight. Thus, because all of the other factors favor approval of the settlement, I shall give the parties another opportunity to amend the settlement agreement for judicial approval.

Accordingly, within 30 days of the date of this Order, the parties are to provide a revised settlement agreement that eliminates the foregoing issue.

Dated: New York, New York
October 18, 2017

SO ORDERED

/s/ Henry Pitman
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel